J-S19030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 316 EDA 2025 |

Appeal from the Order Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0000328-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: K.Z.K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 317 EDA 2025 |

Appeal from the Decree Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000290-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 318 EDA 2025 |

Appeal from the Order Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0000329-2022

IN THE INTEREST OF: L.M.M.S., A : IN THE SUPERIOR COURT OF
MINOR : PENNSYLVANIA
:
:
:
APPEAL OF: R.S., MOTHER :
:
:
:
:
: No. 319 EDA 2025

Appeal from the Decree Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000291-2024

IN THE INTEREST OF: K.S., A : IN THE SUPERIOR COURT OF
MINOR : PENNSYLVANIA
:
:
APPEAL OF: R.S., MOTHER :
:
:
:
:
: No. 320 EDA 2025

Appeal from the Order Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0000330-2022

IN THE INTEREST OF: K.T.A.S.J., A : IN THE SUPERIOR COURT OF
MINOR : PENNSYLVANIA
:
:
APPEAL OF: R.S., MOTHER :
:
:
:
:
: No. 321 EDA 2025

Appeal from the Decree Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000292-2024

J-S19030-25

IN THE INTEREST OF: L.S., A MINOR   :   IN THE SUPERIOR COURT OF
                                     :        PENNSYLVANIA
                                     :
APPEAL OF: R.S., MOTHER              :
                                     :
                                     :
                                     :
                                     :
                                     :
                                     :   No. 322 EDA 2025

Appeal from the Order Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-DP-0000331-2022

IN THE INTEREST OF: L.A.A.S., A      :   IN THE SUPERIOR COURT OF
MINOR                                :        PENNSYLVANIA
                                     :
                                     :
                                     :
APPEAL OF: R.S., MOTHER              :
                                     :
                                     :
                                     :
                                     :
                                     :   No. 323 EDA 2025

Appeal from the Decree Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-AP-0000293-2024

IN THE INTEREST OF: A.M., A          :   IN THE SUPERIOR COURT OF
MINOR                                :        PENNSYLVANIA
                                     :
                                     :
                                     :
APPEAL OF: R.S., MOTHER              :
                                     :
                                     :
                                     :
                                     :   No. 324 EDA 2025

Appeal from the Order Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-DP-0000332-2022

- 3 -

| IN THE INTEREST OF: A.B.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 325 EDA 2025 |

Appeal from the Decree Entered January 8, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000294-2024

BEFORE: PANELLA, P.J.E., STABILE, J., and BECK, J.

MEMORANDUM BY STABILE, J.: **FILED AUGUST 1, 2025**

R.S. ("Mother") appeals from the January 8, 2025 decrees which involuntarily terminated her parental rights to her five biological children: K.S. a/k/a K.Z.K.S., born in December of 2016; L.S. a/k/a L.M.M.S., born in November of 2017; L.S. a/k/a L.A.A.S., born in August of 2019; K.S. a/k/a K.T.A.S.J., born in August of 2020; and A.M. a/k/a A.B.M., born in May of 2021 (collectively, "the Children").[1] Mother also appeals from the accompanying orders that changed the Children's permanency goals from

_____

[1] The Children have a total of four different fathers. The biological fathers are N.S. for K.Z.K.S. and L.M.M.S.; O.T. for L.A.A.S.; R.J. for K.T.A.S.J.; and A.M., who is deceased, for A.B.M.

The trial court terminated the parental rights of N.S., O.T., and R.J. by separate decrees. Because they are not listed on their respective children's birth certificates, the court also terminated the rights to any unknown putative fathers by separate decrees. No biological father nor any putative father appealed or participated in this appeal.

- 4 -

reunification to adoption. After careful review, we affirm the termination decrees and dismiss Mother's appeal from the goal change orders as moot.

We gather the following relevant factual and procedural history from the certified record. On March 31, 2022, the Philadelphia Department of Human Services ("DHS" or "the Agency") received a Child Protective Services report alleging that L.A.A.S., then two years old, ingested fentanyl while in Mother's care. *See* N.T., 1/8/25, at 9. L.A.A.S. was treated at the hospital, where the incident was deemed a near fatality. *See id.*

On April 1, 2022, the trial court placed the Children in the protective custody of DHS and confirmed the Children's removal at a shelter care hearing soon thereafter. All but A.B.M., the youngest child, were placed in the home of the paternal grandmother of K.Z.K.S. and L.M.M.S. *See id.* at 17-18, 30. A.B.M. was ultimately placed with his paternal aunt. *See id.* at 19.

On June 21, 2022, the court adjudicated the Children dependent. The court established the Children's permanency goals as reunification. In furtherance of that goal, Mother was ordered to, *inter alia*: (1) complete substance abuse treatment; (2) attend random drug screens at the Clinical Evaluation Unit; and (3) attend supervised visitation with the Children.

DHS referred Mother to substance abuse treatment providers multiple times, but Mother did not successfully complete such treatment during the Children's dependencies. *See* N.T., 1/8/25, at 11-12, 27. Additionally, Mother did not consistently attend the random drug screens. *See id.* at 12,

27-28. She tested positive for unprescribed opiates and marijuana when she did attend. *See id.*

With respect to supervised visitation, Mother attended approximately 40 percent of her offered visits. *See id.* at 13, 20. Mother never progressed past supervised visitation. *See id.* at 13.

On August 5, 2024, the Agency filed separate petitions seeking the involuntary termination of Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The Agency simultaneously filed separate petitions requesting goal changes to adoption for the Children on the same dates.

The trial court held a combined evidentiary hearing on the Agency's petitions on January 8, 2025. K.Z.K.S. was then age eight; L.M.M.S. age seven; L.A.A.S. age five; K.T.A.S.J. age four; and A.B.M. age three. The Children's guardian *ad litem* ("the GAL"), Allison Houser, Esquire, of the Support Center for Child Advocates, represented their collective best interests. Patricia Cochran, Esquire, represented the Children's collective legal interests as their legal interest counsel ("the LIC").[2]

_____

[2] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if [trial] courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a). *In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020). As the Children's legal interests were represented by counsel, the requirements of 23 Pa.C.S.A. § 2313(a) are met.

DHS presented the testimony of its caseworkers, Latasha Parker, the family's current caseworker since the spring of 2024, and Keisha Dancy, who immediately preceded Ms. Parker. The Children's LIC presented the testimony of social worker Roya Paller. Mother appeared for the hearing, but she did not present testimonial or documentary evidence.

By decrees dated and entered on January 8, 2025, the trial court involuntarily terminated Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The court also changed the Children's permanency goals from reunification to adoption by orders entered on January 8, 2025.

On January 30, 2025, and February 1, 2025, respectively, Mother timely filed separate notices of appeal from the decrees and orders along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. The trial court filed its Rule 1925(a) opinion on March 10, 2025.

On appeal, Mother presents the following issues for our review:

1. Did the trial judge rule in error that the Agency met its burden of proof to terminate Mother's parental rights to the Children?

2. Did the trial judge rule in error that terminating Mother's parental rights would best serve the needs and welfare of the Children?

3. Did the trial judge rule in error that the goal be changed to adoption?

Mother's Brief at 11 (cleaned up).[3]

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

_____

[3] The GAL filed an appellate brief in support of affirming the involuntary termination decrees and goal change orders. The LIC submitted a letter to this Court stating that she joined the position of the GAL.

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the trial court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b). This Court need only agree with the trial court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See M.E.*, 283 A.3d at 830 (citing *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

Our analysis in this case will focus upon 23 Pa.C.S.A. § 2511(a)(2) and (b),[4] which provide, as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

---

[4] By analyzing only Section 2511(a)(2), we draw no conclusions as to the trial court's findings pursuant to Sections 2511(a)(1), (5), and (8). *See B.L.W.*, 843 A.2d at 384.

> causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010)). Overall, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

If the trial court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has further explained that "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). The "severance of a necessary and beneficial relationship [is] the kind of loss that would predictably cause 'extreme emotional consequences' or significant, irreparable harm." *Id.* at 1109-10. The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). "However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citing *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008)).

The *K.T.* Court recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section

2511(b) analysis." **K.T.**, 296 A.3d at 1109. Further, trial courts "must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." **Id.** at 1106.

It is within the province of the trial court to "consider the totality of the circumstances when performing a needs and welfare analysis." **M.E.**, 283 A.3d at 839. Further, this Court has clarified that it is "within the discretion of the [trial] court to prioritize the safety and security" of children "over their bonds with their parents." **Id.** We will not disturb such an assessment if the trial court's factual findings are supported by the record. **See id.**

In her first issue, Mother contends that DHS did not meet its evidentiary burden to terminate her parental rights under Section 2511(a)(2). **See** Mother's Brief at 12-13. Specifically, Mother argues that she "was not relinquishing a [parental] claim" and "was performing her parental duties by completing a parent[ing] class" and attending 40 percent of her offered visitation. **Id.** Mother's arguments are unavailing because they do not address the aforementioned statutory elements relating to Section 2511(a)(2).

The testimony, detailed below, regarding Mother's substance abuse treatment, random drug screen attendance, and drug screen results is undisputed by the parties. With respect to Mother's goals regarding her substance abuse treatment, Ms. Dancy testified that she referred Mother to such treatment three times. **See** N.T., 1/8/25, at 27. Ms. Dancy stated that

Mother was discharged twice for noncompliance from the treatment program offered at "Merakey." *Id.* at 31-32. Ms. Dancy was unaware if Mother had engaged in another treatment program thereafter. *See id.* at 32. Ms. Parker testified that Mother reported that she was enrolled with treatment provider "The Wedge" in February of 2024, but no record confirmation was ever received. *Id.* at 24. Both Ms. Parker and Ms. Dancy stated that DHS received no documentation over the life of the case that Mother successfully completed substance abuse treatment. *See id.* at 11, 27.

Similarly, both Ms. Parker and Ms. Dancy testified that they sent Mother for random drug screens, but her attendance was inconsistent. *See id.* at 12-13, 27. Ms. Dancy testified that Mother tested positive for opiates and marijuana when she did attend on unspecified dates, but never provided the Agency with documentation of an opiate prescription or a medical marijuana card. *See id.* at 27-28. Ms. Parker confirmed this testimony as it relates to marijuana. *See id.* at 12. Further, Ms. Parker testified that Mother never progressed to unsupervised visitation because she never successfully completed substance abuse treatment. *See id.* at 11, 13.

With respect to supervised visitation, Ms. Dancy described her observations as follows:

> [Mother] needed a lot of coaching. It was very hard for her to manage all the [C]hildren at once. There was even an incident

- 13 -

with [A.B.M.] resulting in the child ha[ving] to go to the emergency room.[5]

*Id.* at 32.

The foregoing undisputed record evidence demonstrates that Mother's repeated and continued incapacity and refusal to successfully address her substance abuse and/or consistently comply with the aforementioned objectives have caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. Because the Children have been removed from Mother's custody for approximately three years, the record undoubtedly supports that her incapacity and refusal cannot or will not be remedied. Therefore, we discern no abuse of discretion in the trial court's determination that termination of Mother's parental rights was warranted pursuant to Section 2511(a)(2).

In her second issue, Mother argues that the court abused its discretion in terminating her parental rights pursuant to Section 2511(b) because she was "attending visits" and "had a relationship" with the Children that termination would sever. Mother's Brief at 16. We disagree.

While Mother baldly asserts that she had a relationship with the Children, Mother cites no record evidence to support this assertion, and our review reveals none. Notably, Ms. Paller testified that she spoke with K.Z.K.S. (age eight), L.M.M.S. (age seven), L.A.A.S. (age five), and K.T.A.S.J. (age

_____

[5] The certified record does not contain any further detail about this incident.

- 14 -

four) about their permanency options, including adoption. *See* N.T., 1/8/25, at 35. Ms. Paller explained that K.Z.K.S. and L.M.M.S. had "very strong" understandings of adoption and were "very happy" in the paternal grandmother's home. *Id.* at 36. Ms. Paller testified that L.A.A.S. wanted to stay with the paternal grandmother. *See id.* at 37. Regarding K.T.A.S.J., Ms. Paller stated that the paternal grandmother's home was the only one that "she really has any . . . memory of." *Id.* at 36. Ms. Paller stated that she did not speak with three-year-old A.B.M. because of his young age. *See id.* at 35.

Ms. Paller testified that, because of Mother's inconsistent visitation attendance, spending time with Mother was "not something that [the Children] look forward to." *Id.* at 37. This was confirmed by Ms. Parker's testimony that the Children experience no issues when they separate from Mother after supervised visitation. *See id.* at 13.

Moreover, Ms. Parker and Ms. Dancy testified that the four oldest children share their primary parental bond with the paternal grandmother, a pre-adoptive resource with whom they have resided since their removal in April of 2022. *See id.* at 19-20, 28. Ms. Dancy stated that the youngest child, A.B.M., shares his primary parental bond with his paternal aunt.[6] *See*

---

[6] This paternal aunt is not a pre-adoptive resource. *See* N.T., 1/8/25, at 19, 22; *see also* 23 Pa.C.S.A. § 2515(b)(3) ("[I]f the petitioner [for involuntary termination of parental rights] is an agency, the petitioner shall not be required to aver that an adoption is presently contemplated not that a person with a present intention to adopt exists.").

- 15 -

*id.* at 28-29. Further, Ms. Parker and Ms. Dancy testified that the Children's respective kinship caregivers meet all of the Children's needs and provide them with love, safety, stability, and support. *See id.* at 19-21, 29.

Therefore, on this record, there is no evidence that the Children share a necessary and beneficial relationship with Mother. *See K.T.*, 296 A.3d at 1109. Based upon the undisputed testimonial evidence set forth above, we discern no error or abuse of discretion in the trial court's conclusion that DHS met its evidentiary burden pursuant to Section 2511(b).

We next turn to Mother's third and final issue, wherein she argues that the court abused its discretion in changing the Children's permanency goals from reunification to adoption. We likewise review this issue under the standard of abuse of discretion. *See In re R.J.T.,* 9 A.3d 1179, 1190 (Pa. 2010). When considering a petition for a goal change for a dependent child, the juvenile court must determine the matters set forth at 42 Pa.C.S.A. § 6351(f) of the Juvenile Act. *See In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011). In making these determinations, "[t]he best interests of the child, and not the interests of the parent, must guide the trial court." *Id.* at 1089.

In this case, given our disposition of Mother's appeal from the termination decrees, we conclude that her goal change appeal is moot. *See Interest of A.R.*, 311 A.3d 1105, 1114 (Pa. Super. 2023) (holding that the affirmance of termination of parental rights renders an appeal of the goal

- 16 -

change to adoption moot). Thus, we dismiss the goal change order appeal as moot.[7]

Thus, we affirm the decrees involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b). We dismiss Mother's appeal from the goal change orders as moot.

Decrees affirmed. Appeal from goal change orders dismissed as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/1/2025

---

[7] Even if not moot, we would conclude that Mother has waived her challenge regarding the goal change orders for failing to provide a meaningful argument and citations to relevant legal authority. *See* Pa.R.A.P. 2119; ***In re W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (internal citations omitted) (an appellant's claim is waived when it is not developed and does not provide supporting relevant authority). Indeed, Mother advances no argument as to the goal change order and makes no reference to Section 6351(f) or related case authority. *See* Mother's Brief at 16-17.